UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LINCOLN LAWRENCE,

                                        Plaintiff,                    9:18-CV-0316
                                                                      (BKS/DEP)

        v.

STATE OF NEW YORK, et. al.,

                                        Defendants.

_____

APPEARANCES:

LINCOLN LAWRENCE
13-A-5575
Plaintiff, pro se
Bare Hill Correctional Facility
Caller Box 20
Malone, NY 12953

BRENDA K. SANNES
United States District Judge

## DECISION and ORDER

## I.    INTRODUCTION

        The Clerk has sent to the Court for review a Complaint filed by pro se plaintiff Lincoln

Lawrence ("Plaintiff") pursuant to 42 U.S.C. § 1983 ("Section 1983") and Section 504 of the

Rehabilitation Act of 1973, 29 U.S.C. § 794, asserting claims arising out of his confinement in

the custody of the New York State Department of Corrections and Community Supervision

("DOCCS").  Dkt. No. 1 ("Compl.").  By Order filed on March 14, 2018, United States District

Judge Ann M. Donnelly transferred this action from the Eastern District of New York to the

Northern District of New York ("Northern District").  Dkt. No. 4 (the "Transfer Order").

Plaintiff, who is presently incarcerated at Bare Hill Correctional Facility ("Bare Hill C.F."), has

not paid the filing fee for this action and seeks leave to proceed in forma pauperis.  Dkt. No. 11 ("IFP Application").

## II.    IFP APPLICATION[1]

"28 U.S.C. § 1915 permits an indigent litigant to commence an action in a federal court without prepayment of the filing fee that would ordinarily be charged."  *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010).  Upon review of Plaintiff's IFP Application, the Court finds that Plaintiff has demonstrated sufficient economic need and filed the inmate authorization form required in the Northern District of New York.  Plaintiff's IFP application (Dkt. No. 11) is granted.[2]

## III.    INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this action in forma pauperis, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed in forma pauperis, "the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (I)

---

[1]      In the Transfer Order, Judge Donnelly deferred the decision on Plaintiff's IFP Application to the Northern District.  *See* Dkt. No. 4 at 2.  Plaintiff's IFP application was initially denied as incomplete and the action was administratively closed. Dkt. No. 6.  On April 4, 2018, Plaintiff submitted a second IFP application.  Dkt. No. 7.  The Clerk was directed to re-open the action and the IFP application was denied as incomplete. Dkt. Nos. 8, 9.  On May 9, 2018, Plaintiff filed a third and fourth IFP application.  Dkt. Nos. 11, 12.  Plaintiff's third IFP application (Dkt. No. 11) is denied as moot.

[2]      Section 1915(g) prohibits a prisoner from proceeding in forma pauperis where, absent a showing of "imminent danger of serious physical injury," a prisoner has filed three or more actions or appeals that were subsequently dismissed as frivolous, malicious, or failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(g).  Based upon the Court's review of plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, it does not appear that Plaintiff has accumulated three strikes for purposes of 28 U.S.C. § 1915(g).

is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).[3]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting that Section 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

Additionally, when reviewing a complaint, the Court may also look to the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." *Hudson v. Artuz*, No. 95 Civ. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank*, No. 95-CV-0063 (TJM), 162 F.R.D. 15, 16 (N.D.N.Y. June 23, 1995) (other citations omitted)).

A court should not dismiss a complaint if the plaintiff has stated "enough facts to state

---

[3]       To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" is subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

## IV.   SUMMARY OF THE COMPLAINT

On April 8, 2015, while in DOCCS' custody, Plaintiff underwent surgery for a cataract in his right eye.  Compl. at 5.  On June 23, 2015, defendant Gary Torbey, M.D. ("Torbey") examined Plaintiff and provided post-surgical care at Upstate Correctional Facility.  *Id*.  On April 25, 2016, defendant Sai Gandham, O.P.H. ("Gandham") examined Plaintiff and provided post-surgical care at Coxsackie Correctional Facility ("Coxsackie C.F.").  *Id*.  On May 25, 2016, June 22, 2016, and August 24, 2016, defendant Paul Phelps, O.P.H. ("Phelps") examined Plaintiff and provided post-surgical care at Coxsackie C.F.  *Id.*

While confined at Bare Hill C.F., Plaintiff submitted sick call requests on August 19, 2017, August 22, 2017, August 24, 2017, and August 29, 2017.  Compl. at 6.  Plaintiff asked

4

for an appointment with an ophthalmologist and requested medical treatment to address complications that arose after surgery including significant pain and suffering caused by hair growing at the surgical site. *Id.* at 5-6. At each sick call, Plaintiff was examined by a member of the Bare Hill Nursing Staff (Nurses Jane Doe 1 through 5). *Id.* at 6.

Construing the Complaint liberally, Plaintiff alleges defendants failed to adhere to DOCCS' Directives related to medical care and were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See* Compl. at 8-13. Specifically, Plaintiff claims that defendants: (i) failed to follow post-surgical instructions; (ii) failed to provide adequate post surgical care; (iii) failed to provide access to specialists for post-operative care of plaintiff's eye; and (iv) failed to respond to plaintiff's medical condition. Plaintiff also asserts that claims under Section 504 of the Rehabilitation Act and state law claims for medical malpractice and negligence. *See id.* Plaintiff seeks monetary damages. *See id.* at 14.

## V.    ANALYSIS

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, which establishes a cause of action for " 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortgage Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983)) (footnote omitted); *see also Myers v. Wollowitz*, No. 6:95-CV-0272 (TJM/RWS), 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (stating that "§ 1983 is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights." (citation omitted)). "Section 1983 itself creates no substantive rights, [but] . . . only a

procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James,* 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted). The Court will construe the allegations in the Complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

## A.    Eleventh Amendment

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." U.S. Const. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *see also Idaho v. Coeur d'Alene Tribe of Idaho,* 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10-21 (1890). Eleventh Amendment immunity is lost only if Congress unequivocally abrogates states' immunity or a state expressly consents to suit. *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009). It is well-settled that Congress did not abrogate states' immunity through Section 1983, *see Quern v. Jordan*, 440 U.S. 332, 343-45 (1979), and that New York State has not waived its immunity from suit on the type of claims asserted in plaintiff's complaint. *See generally Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *see also Dawkins v. State of New York*, No. 93-CV-1298 (RSP/GJD), 1996 WL 156764 at *2 (N.D.N.Y. 1996). Actions for damages against a state official in his or her official capacity are essentially actions against the state. *See Will v.*

6

*Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

Plaintiff's claims for money damages pursuant to Section 1983 against Annucci in his "representative" capacity (*see* Compl. at 2) are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b). Plaintiff's claims for money damages pursuant to Section 1983 against the State of New York are also dismissed as Plaintiff seeks relief from a defendant immune from suit under section 1983. *See LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983).

## B.    Eighth Amendment

Claims that prison officials have intentionally disregarded an inmate's medical needs fall under the umbrella of protection from the imposition of cruel and unusual punishment afforded by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 102, 104 (1976). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*.; *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.' " *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104). "First, the alleged deprivation must be, in objective terms, sufficiently serious." *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted). Addressing the objective element, to

prevail a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Second, the defendant must act with a sufficiently culpable state of mind," *Chance*, 143 F.3d at 702 (internal quotation marks and citations omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837; *see also Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999) (With respect to the subjective element, a plaintiff must also demonstrate that defendant had "the necessary level of culpability, shown by actions characterized by 'wantonness.'").

The protections afforded by the Eighth Amendment do not extend to remedy harms which may be inflicted as a result of conduct amounting to negligence or medical malpractice but not encompassing conscious disregard of an inmate's health. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06. Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id*. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id*.; *see also Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").

Additionally, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance*, 143 F.3d at 703. "So long as the treatment

given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Id*.; *Graham v. Gibson*, No. 04-CV-6088, 2007 WL 3541613, at *5 (W.D.N.Y. Nov. 14, 2007) ("Courts have repeatedly held that disagreements over treatment do not rise to the level of a Constitutional violation."); *Jones v. Westchester County Dept. of Corrs. Med. Dept*., 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008) (The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'").  A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.  *Chance*, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . . are not adequate grounds for a section 1983 claim."  *Sonds v. St. Barnabas Hosp. Corr. Health Servs*., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see also Estelle*, 429 U.S. at 107 (noting that medical decisions such as whether or not to order X-rays or other "diagnostic techniques" do not rise to the level of cruel and unusual punishment but are, at most, indicative of medical malpractice).

    a.    **Defendants Torbey, Gandham, Phelps, and Nurses Jane Doe 1 through 5**

    Even assuming that Plaintiff suffered from a serious medical need, Plaintiff does not set forth facts to plausibly suggest that Torbey, Gandham, Phelps, and Nurses Jane Doe 1 through 5 denied him medical care for those needs.  With respect to Torbey and Gandham, Plaintiff claims that he received "post surgical care" from Torbey and Gandham on one occasion.  *See* Compl. at 5.  With respect to Phelps, he performed "post surgical care" on

9

three occasions. *See id*. There are no facts alleged in the Complaint which plausibly suggest that Plaintiff requested, and was denied, treatment from these individuals. The Complaint contains no facts to plausibly suggest that these Defendants culpably and deliberately disregarded Plaintiff's medical needs. At best, Plaintiff alleges that he disagreed with the treatment provided by Defendants.

With respect to Nurses Jane Doe 1 through 5, Plaintiff asserts that the nurses were not qualified to diagnose his eye condition. *See* Compl. at 6. In August 2017, Nurses Jane Doe 1 through 5 responded to Plaintiff's sick call requests for "pain and suffering." *See id.* Plaintiff has not specified what condition(s) he sought treatment for or what treatment the nurses provided. Moreover, Plaintiff does not allege that he requested post surgical treatment or a consult with a specialist from Nurses Jane Doe 1 through 5, when he made such requests, the frequency with which he made such requests, and the nurses response, if any, to those requests. Simply stated, there is nothing in the Complaint to plausibly suggest that Nurses Jane Doe 1 through 5 knew of and disregarded an excessive risk to Plaintiff's health. Plaintiff's allegations, even when generously construed, fail to state any sort of claim against them. Even assuming the nurses were negligent and failed to properly diagnose Plaintiff's condition, that allegation is insufficient to state a claim under the Eighth Amendment. *See Ramos v. New York State*, No. 9:17-CV-337 (LEK/TWD), 2017 WL 4326521, at *3 (N.D.N.Y. Sept. 28, 2017) (dismissing claim that Nurse Jane Doe violated the Eighth Amendment because she was not qualified to render a medical diagnosis).

To the extent that Plaintiff alleges "inadequate medical treatment and medical malpractice," this conclusory allegation is insufficient to allege an Eighth Amendment medical indifference claim. *See Iqbal*, 556 U.S. at 678 (Although the Court should construe the

10

factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Smith*, 316 F.3d at 184 ("[T]he Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law.").

Accordingly, Plaintiff's Eighth Amendment claims against Torbey, Gandham, Phelps, and Nurses Jane Doe 1 through 5 are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1) for plaintiff's failure to state a claim against them upon which relief may be granted.

**b.    Defendants Annucci and Connolly**

To state a viable claim under Section 1983, a plaintiff must allege that the defendant, while acting under color of state law, deprived him of a right, privilege or immunity secured by the Constitution or by the laws of the United States. *See* 42 U.S.C. § 1983. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) (citation and internal quotation marks omitted).

If the defendant is a supervisory official, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501. In other words, supervisory officials may not be held liable merely because they held a position of authority. *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Prior to *Iqbal*, the Second Circuit held that supervisory personnel may be considered

11

"personally involved" only if they (1) directly participated in the alleged constitutional violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).[4]

Plaintiff has not alleged any facts indicating that Annucci or Connolly directly participated in the alleged constitutional violations. Rather, Plaintiff claims that Defendants failed to train or supervise the medical staff. *See* Compl. at 10. Construing the Complaint liberally, Plaintiff alleges that Nurses Jane Doe 1 through 5 "lacked the qualifications, experience, and professional abilities to render a diagnosis of the plaintiff's eye condition." *See* Compl. at 6. It appears that Plaintiff has named Defendants solely because of Annucci's position within DOCCS and Connolly's title as the "Medical Director" at Bare Hill C.F., which is insufficient to demonstrate personal involvement. Indeed, Plaintiff has failed to allege facts which plausibly suggest that Defendants were even aware of any of the alleged ongoing constitutional violations. *See White v. Fischer*, No. 9:09-CV-0240 (DNH/DEP), 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010) ("Vague and conclusory allegations that a supervisor

---

[4]    The Second Circuit has not yet addressed how the Supreme Court's decision in *Iqbal* affected the standards in Colon for establishing supervisory liability. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of *Iqbal* on *Colon* because the complaint "did not adequately plead the Warden's personal involvement even under *Colon*"); *see also Hogan v. Fischer*, 738 F.3d 509, 519 n.3 (2d Cir. 2013) (expressing "no view on the extent to which [*Iqbal*] may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]") (citing *Grullon*, 720 F.3d at 139).

failed to train or properly monitor the actions of subordinate employees will not suffice to establish the requisite personal involvement and support a finding of liability."); *Nash v. McGinnis*, 585 F. Supp. 2d 455, 460 (W.D.N.Y. 2008) ("Although plaintiff need not plead facts in great detail, the formulaic allegation that [the Superintendent] was aware of the alleged violations and did nothing to stop them from occurring, without some factual allegations to explain the basis for that conclusion, is insufficient to render it plausible that [the Superintendent] was personally involved in the alleged constitutional deprivations."); *Williams v. Fisher*, No. 02-CV-4558, 2003 WL 22170610, at *9 (S.D.N.Y. Sept. 18, 2003) (conclusory allegations which fail to show how defendant prison Superintendent was personally involved in, or aware of, the alleged constitutional violation, are insufficient to support a claim for deliberate indifference); *Thomas v. Coombe*, No. 95-CV-10342, 1998 WL 391143, at *5 (S.D.N.Y. July 13, 1998) ("It is not enough to allege that officials failed to carry out the duties of their office or without defining these duties or how each defendant failed to meet them.").

Based upon the foregoing, the Court finds that the Complaint fails to state a claim against Annucci and Connolly upon which relief may be granted. Thus, Defendants, and all claims against them, are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

## C.    Violations of DOCCS' Directives

Plaintiff claims that Defendants violated DOCCS' Directives regarding the care, treatment, and management of inmates. *See* Compl. at 7. A Section 1983 claim brought in federal court is not the appropriate forum to raise violations of prison regulations. *See*

*Hyman v. Holder*, No. 96 Civ. 7748, 2001 WL 262665, *6 (S.D.N.Y. Mar. 15, 2001) (holding

that the failure to follow a New York State DOCCS Directive or prison regulation does not

give rise to a federal constitutional claim).  "A violation of a state law or regulation, in and of

itself, does not give rise to liability under 42 U.S.C. § 1983." *Cusamano v. Sobek*, 604

F.Supp.2d 416, 482 (N.D.N.Y. 2009) (collecting cases); *see also Patterson v. Coughlin*, 761

F.2d 886, 891 (2d Cir.1985) ("[A] state employee's failure to conform to state law does not

itself violate the Constitution and is not alone actionable under § 1983 . . ." ); *Fluent v.*

*Salamanca Indian Lease Auth*., 847 F.Supp. 1046, 1056 (W.D.N.Y. 1994) (holding that

section 1983 imposes liability for violations of rights protected by the Constitution and laws of

the United States, not for violations arising solely out of state or common-law principles).

Failure to follow a DOCCS' Directive does not give rise to a § 1983 claim.  Accordingly, to the

extent that Plaintiff attempts to assert a cause of action against any defendant based upon

the failure to follow DOCCS' directives, these claims are dismissed pursuant to 28 U.S.C. §

1915(e)(2)(B) and 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be

granted.  *See McAllister v. Call*, No. 9:10-CV-610 (FJS/CFH), 2014 WL 5475293, at *11

(N.D.N.Y. Oct. 29, 2014).

**D.    State Law Claims**

Plaintiff asserts state law claims for negligence and medical malpractice.  *See* Compl.

at 13.  To the extent that Plaintiff attempts to assert state law claims against defendants in

their personal capacity, those claims are barred by New York Correction Law § 24.

New York Correction Law § 24(1) provides:

> No civil action shall be brought in any court of the state,
> except by the attorney general on behalf of the state,

> against any officer or employee of the department, which for purposes of this section shall include members of the state board of parole, in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

See Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996).

Courts look at the following factors to determine whether a defendants' action is within the scope of employment:

> the connection between the time, place and occasion for the act; the history of the relationship between employer and employee as spelled out in the actual practice; whether the act is one commonly done by any employee; the extent of departure from normal methods of performance; and whether the specific act was one that the employer could have reasonably anticipated.

Ierardi v. Sisco, 119 F.3d 183, 187 (2d Cir. 1997) (quotations and citations omitted).

"Claims for damages arising out of a DOCCS employee's act performed within the scope of his employment may be maintained in the New York Court of Claims as a claim against the State of New York." Heyliger v. Gebler, No. 06-CV-6220, 496 F.Supp.2d 250, 252 (W.D.N.Y. July 24, 2007).

The test to determine whether the defendants' actions fall within the scope of their employment is "whether the act was done while the servant was doing his master's work no matter how irregularly, or with what disregard of the instructions." Cruz v. New York, No. 13-CV-6131, 24 F.Supp.3d 299, 309 (W.D.N.Y. June 6, 2014) (citing Cepeda v. Coughlin, 128 A.D.2d 995, 996 (3d Dep't 1987)).

Here, Defendants were on duty in the correctional facilities at the time of the alleged constitutional violations. The Complaint lacks any facts to plausibly suggest that Defendants

acted outside the scope of their employment.  Accordingly, Plaintiff's state law claims against

Defendants in their individual capacities are dismissed for lack of subject matter jurisdiction.

## E.    Claims Under Rehabilitation Act

"In order to establish a violation of § 504 [of the Rehabilitation Act], a plaintiff must

show (1) that he has a disability for purposes of the Rehabilitation Act, (2) that he is

'otherwise qualified' for the benefit that has been denied, (3) that he has been 'denied the

benefits' solely by reason of his disability, and (4) that the benefit is part of a 'program or

activity receiving Federal financial assistance.' "  *Flight v. Gloeckler*, 68 F.3d 61, 63 (2d Cir.

1995) (citing, *inter alia*, *Doe v. New York Univ*., 666 F.2d 761, 774–75 (2d Cir. 1981)

(emphasis added)); *C.L. v. Scarsdale Union Free School Dist*., 744 F.3d 826, 840–41 (2d

Cir. 2014).  The protections offered under Rehabilitation Act extend to inmates in state

correctional facilities.  *See Pa. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 213 (1998).

In this case, Plaintiff is barred from bringing a claim under the Rehabilitation Act.

Under the Rehabilitation Act, Plaintiff is barred from suing the individual defendants in their

individual and official capacities for monetary damages.  *Garcia v. S.U.N.Y. Health Scis. Ctr.*
*of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001).  Second, Plaintiff may seek monetary relief

against the state if the alleged violation "was motivated by discriminatory animus or ill will

based on the plaintiff's disability."  *Id*. at 111.  However, Plaintiff does not allege any

discriminatory animus on the part of the defendants. Thus, Plaintiff is barred from seeking

monetary relief from the state.  Because Plaintiff cannot obtain any sort of judicial relief under

the Rehabilitation Act, Plaintiff cannot proceed with the claim.

## VI.    MOTION FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff alleges that the "medical department at Bare Hill Correctional Facility" is providing him with high blood pressure medication that generates "negative side effects." *See* Dkt. No. 10 at 1. Plaintiff also alleges that unidentified correctional officers at Bare Hill C.F. are retaliating against him for filing the within lawsuit. *See id.* at 1, 3. Plaintiff seeks "help" and argues that he was "approved for [ ] transfer to Walkill Correctional Facility on 4-4-2016 and I'm still waiting." *See* Dkt. No. 10 at 1, 3. Construing the submission liberally, Plaintiff seeks injunctive relief. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir 2006) (holding that the Court must read a pro se complaint with "special solicitude" and interpret it to raise the strongest claims it suggests) (citation omitted).

Preliminary injunctive relief " 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.' " *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "In general, district courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)). However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is "even higher." *Cacchillo v. Insmed, Inc*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG*

17

*Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal

quotation marks omitted)).  Thus, a mandatory preliminary injunction "should issue only upon

a clear showing that the moving party is entitled to the relief requested, or where extreme or

very serious damage will result from a denial of preliminary relief."  *Citigroup Global Mkts*.,

598 F.3d at 35 n.4 (internal quotation marks omitted).[5]

"To prevail on a motion for preliminary injunctive relief, the moving party must

establish a relationship between the injury claimed in the motion and the conduct giving rise

to the complaint."  *Candelaria v. Baker*, No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y.

Mar. 10, 2006) (citations omitted).  As discussed *supra*, the named defendants herein are the

State of New York, Annucci, Phelps, Connolly, Gandham, Torbey, and Nurses Jane Doe 1

through 5.  Construing Plaintiff's motion liberally, he seeks relief against unidentified medical

staff and corrections officers at Bare Hill C.F.  *See* Dkt. No. 10.  To the extent that Plaintiff

seeks injunctive relief against individuals who are not defendants in this action, injunctive

relief is available against non-parties only under very limited circumstances, none of which

are present here.  *See* Fed. R. Civ. P. 65(d) ("[e]very order granting an injunction . . . binds

only . . . the parties. . .."); *see also United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988);

*Slacks v. Gray*, No. 9:07-CV-0510, 2008 WL 2522075, at *1 n.1 (N.D.N.Y. Jun. 25, 2008)

(Mordue, C.J.).

Even if the Court could provide relief requested, construing Plaintiff's motion in the

light most favorable to him as a pro se plaintiff, the Court finds that Plaintiff has failed to

---

[5]        Under the Prison Litigation Reform Act, preliminary injunctive relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary to correct the harm, and be the least intrusive means necessary to correct that harm.  *See* 18 U.S.C. § 3626(a)(2).  In considering an application for prospective relief, the court is required to give substantial weight to any adverse impact such relief may have on public safety or on the operation of the criminal justice system.  *See* 18 U.S.C. § 3626(a)(1)(A).

18

substantiate any allegations of irreparable harm with evidence in admissible form or to demonstrate, with evidence, a likelihood of success on the merits of his underlying claims, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *See Hancock v. Essential Res., Inc.,* No. 91-CV-0213, 792 F. Supp. 924, 928 (S.D.N.Y.1992) ("Preliminary injunctive relief cannot rest on mere hypotheticals."). At this juncture, Plaintiff has failed to assert any viable cause of action and all allegations in the Complaint have been dismissed. To the extent that Plaintiff seeks to be housed elsewhere, the Court notes that Plaintiff is currently in DOCCS' custody and it is that entity, and not this Court, who determines where Plaintiff will be housed during his period of incarceration. *See Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983) (holding that prisoners have no right to choose where they are housed).

The Court has reviewed Plaintiff's motion thoroughly and with due regard for his status as a pro se litigant. While the Court does not condone misconduct of any kind, the Court concludes that he has not made a showing sufficient to warrant the issuance of preliminary injunctive relief against the medical department/staff who are not parties to this action.[6]

## VII.    CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 11) is **DENIED as moot**; and it is further

---

[6]      Plaintiff is of course free to pursue claims against the individuals responsible for the alleged wrongdoing through DOCCS administrative procedures and, if necessary, by means of a properly filed action.

**ORDERED** that Plaintiff's in forma pauperis application (Dkt. No. 12) is **GRANTED**;[7] and it is further

**ORDERED** that the Clerk provide the Superintendent of the facility, designated by Plaintiff as his current location, with a copy of Plaintiff's inmate authorization form, and notify the official that this action has been filed and that Plaintiff is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915[8]; and it is further

**ORDERED** that the Clerk of the Court provide a copy of Plaintiff's inmate authorization form to the Financial Deputy of the Clerk's Office; and it is further

**ORDERED** that if Plaintiff wishes to proceed with this action, he must file a signed Amended Complaint as set forth above **within thirty (30) days** from the date of the filing of this Decision and Order[9]; and it is further

**ORDERED** that, if Plaintiff timely files an Amended Complaint, this matter be returned to the Court for further review; and it is further

**ORDERED** that if Plaintiff fails to timely file an Amended Complaint as directed above, the Clerk shall enter judgment indicating that the remainder of this action is **DISMISSED without prejudice** without further order of this Court pursuant to 28 U.S.C. § 1915(e)(2)(B)

---

[7] Plaintiff should note that, although the Court has granted his application to proceed in forma pauperis, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[8] "Although an indigent, incarcerated individual need not prepay the filing fee at the time of filing, he must subsequently pay the fee, to the extent he is able to do so, through periodic withdrawals from his inmate accounts." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *1 (S.D.N.Y. Oct. 26, 2010) (citing 28 U.S.C. § 1915(b) and *Harris v. City of New York*, 607 F.3d 18, 21 (2d Cir. 2010)).

[9] Plaintiff did not personally signed the complaint. *See* Compl. at 14. Rule 11(a) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") states in relevant part:  (a) SIGNATURE. Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented.  Accordingly, Plaintiff is advised to sign any amended pleading.

for failure to state a claim upon which relief may be granted and for failure to comply with this Decision and Order.  In that event, the Clerk is directed to close this case; and it is further

  **ORDERED** that Plaintiff's motion for preliminary injunctive relief (Dkt. No. 10) is **DENIED**; and it is further

  **ORDERED** that the Clerk serve a copy of this Decision and Order on Plaintiff, together with a copy of the original Complaint.

  Dated:  June 22, 2018

Brenda K. Sannes
U.S. District Judge